IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RAINBOW POPCORN COMPANY, Inc., )
a Nebraska Corporation,         )
                                )
          Plaintiff,            )
                                )
          v.                    )
                                )
INTERGRAIN SPECIALTY PRODUCTS,  )          7:06CV5015
L.L.C., an Indiana Limited      )
Liability Company, ALMCO, Inc.,)
an Indiana corporation, and     )        MEMORANDUM AND ORDER
JOHN WALTHALL, an Individual,   )
                                )
          Defendants,           )
                                )
_____  )
                                )
INTERGRAIN SPECIALTY PRODUCTS,  )
LLC, ALMCO, INC. and JOHN        )
WALTHALL, Individually,         )
                                )
          Counterclaimants,     )
                                )
          v.                    )
                                )
RAINBOW POPCORN CO., INC.,      )
                                )
          Counter-Defendant,    )
                                )
_____  )
                                )
INTERGRAIN SPECIALTY PRODUCTS,  )
LLC, ALMCO, INC. and JOHN        )
WALTHALL, Individually,         )
                                )
          Third-Party           )
          Plaintiffs,           )
                                )
          v.                    )
                                )
RAINBOW GRAIN CO., INC.,        )
                                )
          Third-Party           )
          Defendants.           )

The following motions are currently submitted for the court's review:

-- The motion filed by Inter-Grain Specialty Products, LLC, ("Inter-Grain"), ALMCO, Inc., ("Almco"), and John Walthall, ("Walthall") (hereinafter collectively referred to as "defendants") seeking an order striking the plaintiff's supplemental Rule 26 disclosure and expert witness designation. Filing 66.[1]

-- The motion to amend complaint filed by plaintiff and counter defendant Rainbow Popcorn Company, ("RP"), and third party defendant Rainbow Grain Co., Inc., ("RG"), filing 68;

-- The motion to strike expert witness filed by RP and RG,(hereinafter collectively referred to as "plaintiff"), filing 72; and

-- The motion to compel and for sanctions filed by RP and RG, filing 80.

A review of these motions establishes that the process of cooperative pretrial preparation has deteriorated to an

---

[1] Nine documents were both attached to this motion and separately filed with an index, only one of which was not a previous court filing.  The court advises counsel that they need not file copies of this court's own filings and orders as evidence in support of motions.  Referencing these documents by filing number is not only sufficient, but preferable.  The court takes judicial notice of the court file both at the parties' specific request and, when appropriate, sua sponte.  Filing the same documents again in support of or opposition to a motion creates unnecessary work for the parties and confusion in the file.

unreasonable and nonproductive level, necessitating court intervention if this case is to proceed.  Accordingly, the court will resolve each of the parties' motions in turn.

MOTION TO AMEND
(Filing 68)

The merits of the parties' discovery motions depends, at least in part, on whether the court grants the plaintiff's motion to file an amended complaint.  Accordingly, the motion to amend will be addressed first.

The plaintiff's proposed amended complaint adds a common law breach of contract claim and a RICO claim.  The factual basis of the common law contract claim is based upon and encompassed within the allegations of plaintiff's initial complaint.  Compare filing 1, ¶ 15 with filing 68, ex. 1 ¶ 38.[2]  As to this claim, the primary change is that the proposed amended complaint adds a label identifying an alternative legal theory of recovery. Although stating the legal theory of a claim is unnecessary under the Federal Rules of Civil Procedure, no prejudice, and perhaps some clarity results from doing so.  As to the plaintiff's proposed "Fourth Cause of Action" for "Breach of Contract," the plaintiff's motion to amend will be granted.  See, Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 944 (8th Cir. 2000) (holding the trial court abused its discretion when it denied the plaintiff's motion to amend the complaint to add state law claims based on the same facts alleged in the initial complaint).

_____

[2]The court does note that a discrepancy exists between the amount owed as alleged in paragraph 38 of the plaintiff's proposed amended complaint and the amount allegedly owed as described in the affidavit of plaintiff's counsel and its attached Exhibit A.  Filing 74, (Schreiber affidavit, ¶ 4).

The plaintiff's "Third Cause of Action" for "Civil Violation of RICO," adds allegations of fact not previously raised in the parties' pleadings.  Specifically, the plaintiff alleges the defendants conspired to fraudulently withhold payments owed for popcorn shipments by raising false and unsupported claims that the popcorn sold to the defendants was defective or infested, and that the defendants have a pattern and practice of doing so as evidenced by similar fraudulent schemes inflicted on other popcorn growers in the past.

The plaintiff's motion to amend is untimely.  See filing 40, ¶ 8.  However, the court must not adhere to a scheduling order when doing so will undermine the just determination of the parties' dispute on its merits.

> [P]ermission to file a first amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Denial of leave to amend is justified only in the limited circumstances of "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party."

Krispin v. May Dept. Stores Co., 218 F.3d 919, 924 (8th Cir. 2000) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)).  "In most cases, '[d]elay alone is insufficient justification; prejudice to the nonmovant must also be shown.'" Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (quoting Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998)).  When a party seeks to amend its pleadings after the deadline for doing so has passed, the court must consider the reasons for the noncompliance; the seriousness of the claim or defense sought to be added; the prejudice, if any, to the opposing parties; and

whether that prejudice can be reduced or eliminated by granting a
continuance in the case.  Popp Telcom, 210 F.3d at 943.

     In support of its motion to amend, plaintiff's counsel
states that he started the deposition of John Walthall on
December 12, 2007, and during the course of that deposition,
asked questions concerning defendants' payment for popcorn
provided by prior popcorn suppliers, including Allen Overby of
Overby Grain Farms, Inc.  Plaintiff's counsel interpreted
Walthall's responses as evasive.  He therefore contacted both
Overby Grain and Preferred Popcorn, LLC, and in the course of
that informal discovery, learned that these popcorn providers
were likewise allegedly denied full payment by the defendants
based on numerous allegedly unsupported claims of defective
products.  Plaintiff's counsel further states that as of the
filing of the motion to amend:  1) the defendants had scheduled
but had not yet taken any depositions; 2) the defendants had not
provided the supplemental interrogatory responses that were
promised four months earlier; 3) the defendants' delayed response
to plaintiff's interrogatories was hampering its ability to
prepare for trial; and 4) although plaintiff's counsel had taken
some depositions, more were scheduled.  Filing 74, (Schreiber
affidavit), ¶¶ 5-10.

     The defendants do not refute these statements.  Rather, they
argue leave to amend must be denied because the plaintiff was
able and should have contacted Overby Grain and Preferred
Popcorn, LLC before filing suit or before the expiration of the
deadline for filing motions to amend pleadings, and had it done
so, "all of the facts, allegations, and witnesses could have been
ascertained by RP well in advance of its most recent filing to
Amend its Complaint."  Filing 76, ¶ 6.  Quoting from the

affidavit of plaintiff's counsel, the defendants argue "RP was aware of the existence of Overby Farms and Preferred Popcorn and the potential relationship with Inter-Grain, [yet] only after the conclusion of the first part of John Walthall's deposition, did [plaintiff's counsel] further investigat[e] . . . Overby and other previous suppliers of popcorn to Defendants." Filing 76, ¶ 10.  The defendants therefore argue that had the plaintiff been diligent, the plaintiff could have avoided the delay that will result if the complaint is amended to add a RICO claim, and therefore the plaintiff's motion to amend should be denied.

The court disagrees.  The initial complaint arises from a series of business transactions and a contract dispute between the plaintiff and the defendants.  Under ordinary business circumstances, the plaintiff would have no reason to investigate how the defendants transacted business with a different popcorn supplier.  Neither Rule 11 nor the informal discovery expectations of this court require a plaintiff pursuing transactional litigation to engage in promptly investigating unrelated transactions between the defendants and nonparties, much of which would be irrelevant in the vast majority of such cases.[3]

---

[3]The defendants do not dispute that such information is irrelevant in most contract cases.  In arguing that the court should strike plaintiff's supplemental Rule 26 disclosure naming Overby Farms and Preferred Popcorn representatives as witnesses, the defendants state "the listed expected testimony of each new non-expert witness is clearly irrelevant 'character and propensity evidence' specifically barred from admission into evidence by Federal Rules of Evidence 404, 405, and 608." Filing 66, ¶ 29.  See also, filing 50, p. 152 (Letter of Jason Massaro, May 9, 2007) ("[T]he identity of Inter-Grain's customers is entirely irrelevant.  I cannot come up with one single reason why your clients would need to see any specific customer names to calculate your alleged damages.")

Based on the record, the court finds the plaintiff promptly investigated once it suspected difficulties had arisen between the defendants and their previous popcorn suppliers, and its resulting allegations concerning the defendants' illegal pattern and practice of fraudulent conduct were raised before the defendant took any depositions.  The plaintiff's new allegations are serious, and if proved, may justify an award of treble damages.  The defendants will not be required to take supplemental depositions as a result of permitting the proposed late amendment of the complaint.  Moreover, the court notes that the parties' on-going discovery disputes and delays would likely have caused another trial continuance anyway.  Specifically, although the pretrial conference was scheduled for January 16, 2008, and trial was set to begin on February 11, 2008, the defendants did not intend to take any depositions until January 2008, (see filing 66, ¶¶ 16-17); the proposed date for finishing the deposition of defendant Walthall and conducting the 30(b)(6) depositions of defendants Intergrain and Almco was January 24, 2008, (filing 66, ex. 8), and the parties were scheduling video conference depositions of witnesses located in Mexico for the week of January 21, 2008.  Filing 93, ¶ 17.  Ultimately, the previously set pretrial and trial dates were continued due to a bankruptcy stay.  Finally, to the extent any trial delay will be caused by the filing of plaintiff's proposed amended complaint, there is no showing that continuing the trial will unduly prejudice the defendants.

For the foregoing reasons, the plaintiff's motion to amend will be granted.

MOTION TO STRIKE SUPPLEMENTAL RULE 26 DISCLOSURE
AND EXPERT WITNESS DESIGNATION
(Filing 66)

Six days before it moved to amend its complaint, the
plaintiff filed a supplemental Rule 26 disclosure.  Filing 65.
As explained by the defendants, "the witnesses which would
purportedly testify to the alleged conspiracy under RP's RICO
Count would be those listed on Plaintiff's Supplemental Trial
26(a) Disclosure."  Filing 76, ¶ 7.  The defendants have moved to
strike the plaintiff's supplemental disclosure of non-expert
witnesses and its expert witness designation.  Filing 66.

1.    Non-expert witnesses.

Regarding the supplemental disclosure of non-expert
witnesses, the defendants claim plaintiff's supplemental
designation must be stricken as untimely filed without leave of
the court.  As with their argument regarding plaintiff's proposed
RICO claim, the defendants claim the plaintiff could have timely
discovered the identity of these additional non-expert witnesses
had they thoroughly investigated this case earlier, and the
supplemental disclosure was made after the defendants' counsel
traveled to Lincoln, Nebraska to participate in an unsuccessful
mediation.

The court is granting the plaintiff's motion to file an
amended complaint to add the RICO and breach of contract claims.
The plaintiff is entitled to disclose the identity of witnesses
supporting these claims.  The record indicates the plaintiffs
promptly disclosed these potential witnesses once they were
identified.

8

The defendants' argument that it was somehow prejudiced because plaintiff's supplemental disclosure was made following the parties' failed mediation in Lincoln, Nebraska is perplexing. To the extent the defendants are claiming they incurred unwarranted attorney fees and expenses for attorney travel to Nebraska for the mediation, the court notes that this case was filed in Nebraska from the outset, and the additional cost of litigating from a distance was foreseeable.  The court further notes that the failed mediation occurred on December 9, 2007, (filing 66, ¶ 23), before Walthall's deposition on December 12, 2007, (filing 70, (Schreiber affidavit), ¶ 5), the outcome of which prompted the plaintiff to further investigate the defendants' business practices with other companies.  While the defendants' case may not have improved following the mediation, and the defendants will now need to defend against additional allegations, the plaintiff is not to blame for that development. Any prejudice caused by plaintiff's supplemental disclosure of witnesses following the unsuccessful mediation is attributable to the plaintiff's discovery of additional and potentially relevant facts, and not its late disclosure of the witnesses who may provide testimony regarding those facts.

The defendants' motion to strike the supplemental disclosure of non-expert witnesses will be denied.

2.   Expert Witnesses.

The defendants have also moved to strike the plaintiff's expert witness disclosure.  Based on the record before the court, the plaintiff never disclosed an expert.  See filing 65. However, the December 14, 2007 email exchange between counsel indicates the plaintiff intends to call an "accounting expert on

the issue of JV profits." Filing 67, ex. 8.  The defendants
claim the plaintiff should not be allowed to call such a witness
because the plaintiff has not identified this expert or provided
any portion of the disclosure required under Rule 26(a)(2), and
any attempt to do so at this time will be untimely and unduly
prejudicial to the defendants.  Filing 66.  Plaintiff's counsel
responds that the parties have been embroiled in protracted
discovery disputes on several matters, including whether and
under what terms the defendant must produce third party invoices;
these invoices were needed as the basis for any expert assessment
of plaintiff's damages; the discovery dispute over the invoices
was not resolved until September 18, 2007, when the court entered
a protective order regarding the production of defendants' third-
party invoices; and even then, the defendants did not produce the
invoices until October 26, 2007.  Filing 93, ¶¶ 9-11.

    The defendants reply that the plaintiff is solely to blame
for the discovery disputes and thereby caused the delay in
receiving the third party invoices, and any expert disclosure
extension granted to the plaintiff would serve to reward the
plaintiff for its own bad faith discovery tactics.  Filing 100,
¶¶ 6-7.  Specifically, the defendants state:

> This Court's record will reflect that the Motions to
> Compel were ruled completely against RP and RG and a
> Protective Order was entered which RP and RG previously
> attempted to renege on.  The discovery disputes and the
> concomitant delays were wrongfully caused by RP and RG
> and they cannot be heard to benefit from their bad
> faith discovery tactics.

Filing 100, p. 3, ¶ 7.

    The defendants do not cite to the evidence submitted or the
court rulings they rely on in raising this accusation.  The court

10

has thoroughly reviewed its record and cannot find support for the defendants' claim.  Based on the record, the court did not rule "completely against RP and RG" on the motions to compel. Rather, the court instructed the parties to "meet and confer" to resolve their differences, and to advise the court of what remained for ruling once this threshold step was complete. Filings 60, 61, and 62.  The parties' efforts resulted in resolution of the motions to compel with the entry of a protective order.  Filing 63.  There is nothing before the court or previously presented to the court indicating "RP and RG previously attempted to renege on" a protective order. Defendants' counsel is advised that unsupported accusations do not advance the resolution of cases and are neither considered nor appreciated in this forum.

That said, even assuming the plaintiff did not receive the invoices needed for an accounting expert to formulate expert opinions until October 26, 2007, (filing 93, ¶¶ 9-11), as of December 19, 2007, the date defendants' motion to strike was filed, (filing 66), the plaintiff had still not served an expert disclosure in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Under such circumstances, the court could, in its discretion, strike the plaintiff's accounting expert as untimely.

However, the record indicates that even had this case not been stayed for bankruptcy proceedings, it is highly unlikely it would have been tried in February 2008.  Before the suggestion of bankruptcy was filed, the parties were attempting to schedule depositions of key witnesses to be taken after the date of the pretrial conference, (filing 66, ex. 8; filing 93, ¶ 17), and within two weeks of the scheduled trial.  Even considered from

11

the context of when defendants' motion to strike was filed, I am
not convinced the trial of this case would have been delayed to
defendants' prejudice had the court then permitted plaintiff's
untimely disclosure of an expert.

Under the current posture of the case, the defendants cannot
show prejudice from plaintiff's untimely disclosure.   The
plaintiff will be granted leave to file an amended complaint.
The amended complaint raises new issues, necessitating additional
discovery and a new progression schedule.  Under such
circumstances, foreclosing the plaintiff's opportunity to
disclose an expert would undermine determining this case on the
merits in favor of adhering to obsolete deadlines.

Defendants' motion to strike plaintiff's expert witness
designation will be denied.

### PLAINTIFF'S MOTION TO STRIKE EXPERT WITNESS
#### (Filing 72)

RP and RG have moved to strike the defendants' expert
witness, Bill Tarter, Jr., claiming the defendants have failed to
comply with F.R.C.P. 26 by failing "to disclose the opinions that
Mr. Tarter intends to offer, the basis for his opinions, his
qualifications, publications and previous expert witness
experience, all in violation of F.R.C.P. 26 (a)(2)(B)." Filing
72.  Pursuant to the court's scheduling order, plaintiff's expert
witness disclosure was due on May 11, 2007, and the defendants'
expert disclosure was due on June 11, 2007.  The plaintiff was
given until June 25, 2007 to disclose any rebuttal experts.
Filing 44, ¶ 3.  See also, filing 66, ¶¶ 8-10 (commenting that
the parties never stipulated to extend the expert disclosure
deadlines).

12

Plaintiff's and defendants' counsel do not agree on when and to what extent the defendants identified and disclosed Mr. Tarter as a retained expert, and each attorney has provided his respective version of the facts by affidavit or a declaration signed in accordance with 28 U.S.C. § 1746. Plaintiff's counsel states that as of March 21, 2007, the defendant had provided responses to document production requests, including two documents referencing Mr. Tarter, but had not disclosed "Mr. Tarter's work experience, publications, trial or testimony experience, the basis for any opinions he intends to offer in this case or, for that matter, the opinions that he intends to offer as an expert witness." Filing 74, ¶ 2. Plaintiff's counsel states that as of December 20, 2007, it had not received any "scientific reports" for this case, including any prepared by Mr. Tarter. Filing 74, ¶ 3.

In contrast, defendants' counsel states that Mr. Tarter was listed in RP's initial Rule 26(a) disclosures filed in January 2007; he was identified as defendants' retained expert during conversations with plaintiff's counsel on March 8, 2007, March 11, 2007, September 7, 2007, October 17, 2007, November 14, 2007, and November 28, 2007; he was identified in an email dated May 9, 2007 as a trial expert for the defendants; and Mr. Tarter's lab report was provided on September 11, 2007, the content of which sets forth his expert opinions and the basis of those opinions. Filing 78.

The plaintiff did not list Mr. Tarter by name in its initial Rule 26(a) disclosure. See filing 41. The defendants' initial disclosure filed on January 3, 2007 identifies Mr. Tarter as a witness and states he possesses:

13

> Personal knowledge regarding Plaintiffs,
> Counter-Defendant's, and/or Third-Party Defendant's
> quality control methods, storage procedures, means and
> methods of operation; existence of defective goods,
> including corn and other grain; personal information
> regarding the business arrangements of the parties,
> course of trade and dealing; pricing issues, industry
> standards; quality control issues; claims made;
> knowledge regarding corn and other grain handling,
> storage and delivery; fumigation issues, and labeling
> for the usage of Actellic insecticides.

Filing 42, p. 8.

Apparently, four popcorn samples were tested by Mr. Tarter
at Alvey Laboratories on or about January 6, 2006, and a testing
report was issued.  Filing 74, ex. A.  This report was first
provided to the plaintiff in defendants' response to document
production requests dated March 11, 2007.  The defendants had
collected additional samples for testing, beginning perhaps as
early as "1-19-06," but these samples were not received by Alvey
Laboratories until "11 March 07."  Filing 74, ex. A.

The defendants' statement that they disclosed Mr. Tarter as
a retained expert on March 8 and March 11, 2007, (filing 78), is
contrary to the records within the judge's file for this case.
The telephonic planning conference was held on March 12, 2007 at
9:30 a.m.  According to the file maintained in the chambers of
the undersigned, defense counsel advised the court and
plaintiff's counsel during that conference that although the
defendants would likely have four or five expert witnesses, these
experts had not yet been identified.  I do not, however, place
any weight on this discrepancy, as it is not "of record."

As of March 30, 2007, the defendants acknowledged they had
not fully completed and organized responsive discovery documents

for expert review, and may actually need an expert's assistance
to do so.  Filing 50-4, p. 6.  In May of 2007, the parties
exchanged letters regarding the scheduling of Mr. Tarter's
deposition.  Filing 50-4, pp. 27-33.  Defense counsel's letter to
plaintiff's counsel dated May 7, 2007 stated defense counsel
could be available for depositions on May 29 and May 31, but
"since [Mr. Tarter is] not represented by me, I make no
representation as to [his] availability and you will need to
contact [him] yourself to determine [his] respective availability
and the costs to depose [him]."  Filing 50-4, p. 29.  Defendants'
counsel states he identified Mr. Tarter as a retained expert in
an email dated May 9, 2007, (filing 78, ¶ 3), but the defendants
have not cited, and the court has not located, a copy of this
email in the court's file.

On May 17, 2007, the defendants supplemented their discovery
responses, stating "additional scientific reports would be
forthcoming."  Filing 78, ¶ 4.  Mr. Tarter's report was issued on
May 19, 2007, (filing 79, ex. 1), but it was not provided to the
plaintiff until September 11, 2007.  Filing 78, ¶¶ 4, 7.  The
defendants' expert disclosure deadline was June 11, 2007.  Filing
44, ¶ 3.

The plaintiff claims the defendants did not identify Mr.
Tarter as a retained expert until December 3, 2007, when
plaintiff's counsel received the following email:

> I have spoken with our expert, Mr. Tarter, regarding
> his deposition.  He has indicated that he is not
> available the 11th of December.  His schedule requires
> much more Notice than that and he is out of town the
> 11th.
>
> He also indicated that he requires a pre-paid fee of
> $200.00/hour with a 4 hour deposition minimum.  Also,

15

he indicated that any deposition must occur in
Carlisle, Illinois.

Mr. Tarter stated that he would be available for his
deposition on December 27th or the 28th. He is also
available on January 3rd or the 4th. I am free on any
of those dates. Please advise as to how you wish to
proceed.

Filing 74, ex. 3.


The defendants argue "any claim by RP that it did not know
that Bill Tarter, Jr. would be Defendants' expert or any claim
that RP did not timely have Bill Tarter's expert report is simply
untrue." Filing 78, ¶ 4. Defendants' counsel states, "Mr.
Tarter has been timely disclosed as an expert. RP has long known
that Mr. Tarter was Defendants' expert. Mr. Tarter's report and
expected testimony were timely provided." Filing 78, ¶ 11.


Based on the foregoing facts of record, the court finds that
the defendants did not timely or fully disclose Mr. Tarter as a
retained expert for the defendants. Despite the statements of
defense counsel, it is highly suspect that the defendants
considered and disclosed Mr. Tarter as their retained expert as
of May 2007 when, at the same time, defense counsel was stating
he did not represent Mr. Tarter and was therefore instructing
plaintiff's counsel to contact Mr. Tarter directly to make
deposition arrangements and determine the cost of obtaining his
testimony. Filing 50, p. 149. For no reason disclosed in this
record, Mr. Tarter's May 19, 2007 report was not provided to
plaintiff's counsel until September 11, 2007, at least two
months after the defendants' expert disclosure deadline.[4]

_____

[4]In support of defendants' motion to strike plaintiff's
designation of an expert witness, defense counsel states the
parties never stipulated to an extension of the expert disclosure

Moreover, Mr. Tarter's report, (filing 79, ex. 1), does not comply with the requirements Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  Based on the record before me, the defendants have not disclosed "the witness's qualifications, including a list of all publications authored in the previous 10 years," "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition;," or "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26 (a)(2)(B).  The court also finds that although the report appears to contain the witness' ultimate opinions, it does not fully state the basis and reasons for those opinions, or the data or other information considered by the witness in forming the opinions.  For example, the report does not state when the samples were collected; how they were stored and secured from bacterial and fungal contamination following collection, during transport, and prior to testing, or whether these issues were

---

deadlines, and the plaintiff failed to file a motion requesting such an extension.  Filing 100, ¶ 4.  However, the email exchange between counsel on May 10, 2007 directly contradicts this statement.  The parties apparently mutually agreed to a thirty-day extension of the deadline for disclosing expert witnesses, and further agreed it was unnecessary to file a motion and obtain a court order extending the expert disclosure deadline.  Filing 93, ex. A.

As the parties are fully aware, (see filing 93, ex. A, p. 2), the court's scheduling order states, "[a]ll requests for changes of deadlines or settings established herein shall be directed to the magistrate judge by appropriate motion, including all requests for changes of trial dates." Filing 44, ¶ 9.  The expert disclosure deadlines are specifically set forth in the scheduling order.  As such, the parties knowingly violated this court's order by mutually agreeing to extend the expert deadlines and proceeding as such without seeking and obtaining leave of the court.  This practice is not condoned, and will not be further tolerated.

even considered;[5] what specific tests were performed; and the
specific results of those tests.

Unlike the circumstances underlying plaintiff's delayed
expert disclosure, it appears the defendants had all the
information needed to disclose Mr. Tarter as a retained expert
long before the defendants' expert disclosure deadline.  They
have offered no reasonable excuse for withholding this
information.  Had this case proceeded to trial as scheduled on
February 11, 2008, the court would have granted the plaintiff's
motion to strike the defendants' designation of William Tarter as
a retained expert witness.  If the case were currently ready for
trial, the court would grant the plaintiff's motion to strike.

However, this case is not ready for trial, and consistent
with the reasoning underlying denial of the defendants' motion to
strike the plaintiff's expert, the court will deny the
plaintiff's motion to strike the defendants' untimely disclosure
of William Tarter as defendants' retained expert.  A new
progression order will be entered setting forth deadlines to
progress this case for final resolution.

PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS
(Filing 80)

The plaintiff has moved "for an Order compelling the
Defendant, John Walthall, to answer and fully respond to
questions posed to him during his deposition; for a Protective
Order regarding Defendant and his counsel's conduct at the

---

[5]The court specifically notes Mr. Tarter's statement that,
"the bags are stained with Fusarium, Penicillium and Diplodia
obviously transferred from grain previously held in the bag."
Filing 79, ex. 1, p. 1.

18

resumption of John Walthall's deposition, and for appropriate
sanctions under Fed.R.Civ.P. 37."

Defendant Walthall was deposed by plaintiff's counsel on
December 12, 2007, in Indianapolis, Indiana.  Plaintiff's counsel
had also served Rule 30(b)(6) deposition notices to depose the
designated representatives of Intergrain and ALMCO on December
12, 2007.  Filing 82, ¶¶ 2-3.  Walthall was the designated
representative of both Intergrain and ALMCO, and defendants'
counsel insisted that three separate depositions of Walthall be
taken.  Filing 82, ¶ 3; ex. A, p. 4.

Several issues arose during the course of Walthall's
deposition.  In order to expedite the process, plaintiff's
counsel intended to simultaneously depose Walthall in his
individual capacity, as the designated witness for ALMCO, and as
the designated witness for Intergrain.  Filing 82, ex. A
(Walthall deposition), at p. 4; filing 101, exs. 1-4.
Defendants' counsel disagreed because the plaintiff's complaint
sought to pierce the corporate veil and thereby expose Walthall
to personal liability for the actions of ALMCO and Intergrain.
Filing 82, ex. A (Walthall deposition), at p. 4.  Plaintiff's
counsel responded by choosing to begin with taking Walthall's
deposition in his individual capacity.  Filing 82, ex. A
(Walthall deposition), at p. 5.  Against that framework, the
following occurred during the deposition:

--   Walthall testified that he reviewed documents in preparation
     for his deposition as the designee for ALMCO and Intergrain,
     but not in his individual capacity.  Filing 82, ex. A
     (Walthall deposition), at pp. 5, 26-27.  Walthall was asked
     to explain how he reviewed documents in preparation for

19

three separate depositions and compartmentalized the
knowledge gained in a manner that permitted him to say he
had reviewed nothing in preparation for his individual
deposition.  Defendants' counsel interjected comments, and
Walthall parroted those comments by stating he read only the
notice of deposition in preparation for his individual
deposition.  Filing 82, ex. A (Walthall deposition), at pp.
26-28.

\-\-    Walthall was asked to describe the consulting and purchasing
work he performed for ALMCO.  Defendant's counsel stated
such answers should be provided by Walthall as ALMCO's
designated representative and not Walthall in his individual
capacity.  Filing 82, ex. A (Walthall deposition), at pp.
20-22.  Plaintiff's counsel explained, "It's not outside the
scope of the deposition.  He's sitting here as a party to
the lawsuit, and who he worked for and the duties he did in
those jobs is within his personal knowledge."  Defendants'
counsel insisted that such questions must be asked in the
30(b)(6) depositions, and not of Walthall in his individual
capacity.  Filing 82, ex. A (Walthall deposition), at pp.
22-23.  Walthall ultimately answered that he did not perform
consulting work for ALMCO "as an individual."  Filing 82,
ex. A (Walthall deposition), at pp. 23, 27.  In the end,
Walthall would sometimes instruct plaintiff's counsel that
the question posed should be directed to ALMCO or
Intergrain, and not Walthall.  Filing 82, ex. A (Walthall
deposition), at pp. 36, 38, 40-41.  At other times, Walthall
expressed confusion as to whether he should answer a
question, or what the question meant if considered in the
context of Walthall as an individual.  Filing 82, ex. A
(Walthall deposition), at pp. 26, 30-31, 34-35, 67.

-- Early in the deposition, defendants' counsel advised plaintiff's counsel that unless the deposition of Walthall in his individual capacity was conducted within the parameters set by defendants' counsel, the deposition would be terminated. Defense counsel stated, "I'm going to let it go along a little bit longer, but if you get outside the purview, then we're going to stop and move on to the other depositions." Filing 82, ex. A (Walthall deposition), at p. 23.[6]

-- Defendants' counsel objected to questions asked of Walthall concerning his knowledge of ALMCO and Intergrain. Walthall was instructed by his counsel not to respond to questions asking:

  • What percentage of ALMCO's business was with Kadosa in 2003, 2004, 2005, 2006, and 2007;

  • Whether he was aware of any problems that ALMCO or Intergrain had with any of its popcorn suppliers; and

---

[6]Though not raised by the plaintiff's motion to compel, the court further notes that during the deposition, defendants' counsel raised improper vagueness objections; interjected requests for clarification when the question, considered in context, was clear; or stated he did not understand the question. Walthall would then often respond that he did not understand the question. See e.g., filing 82, ex. A (Walthall deposition), at pp. 26, 29, 37-38, 42, 52-53, 56. Plaintiff's counsel objected to this conduct by defense counsel. Filing 82, ex. A (Walthall deposition), at p. 53. The court, likewise, does not approve of interrupting the questioning process with counsel's invalid comments that questions are insufficiently clear and need to be re-phrased.

- What problems Intergrain had with other popcorn suppliers.

Filing 82, ex. A (Walthall deposition), at pp. 33-34, 37.  The following exchange occurred.

Q.   Does ALMCO still do business with Kadosa?

A.   Ask ALMCO.

MR. MASSARO:   Yes, come on.  You're getting into ask ALMCO that.  You have a notice for them.

MR. SCHREIBER: I'm asking John Walthall as an employee of ALMCO.  Frankly, Jason, I have never seen anybody [insist] on this ludicrous procedure.  I've had multiple lawsuits involving individuals who are shareholders of companies who have been named as companies, individuals, and nobody's insisted on this procedure.  And I don't think there's any basis in law for this procedure.  So I'm going to continue to ask every one of these questions to John Walthall in this individual deposition.  You just go ahead and object all you want.  We'll take it up with the Court.

MR. MASSARO:   That's fine.

MR. SCHREIBER: I understand your objection and just keep making it.  I'll give you a standing objection if you'd like.

MR. MASSARO:   No.  I'll keep making it, but it's going to end pretty soon.  I mean, I've never sat through a deposition for over an hour where we've not elicited a single relevant piece of testimony.

MR. SCHREIBER: That's because you wont allow your client to testify to a relevant piece of testimony.

MR. MASSARO:   You have him here as ALMCO and Intergrain.  Ask him as AlMCO and Intergrain.  I mean, what you want to do is get around what you

22

should have put in your 30(b)(6).  You
didn't.  That's not to be laid at my
doorstep.  You want to ask John Walthall
individually.  You've got a piercing count.
I understand that you have separate
corporations and individuals, but you have a
piercing Count.  That's the fundamental
difference.

MR. SCHREIBER: And there's nothing in the law that says just
because a piercing count has been made, I
cannot ask a man who is the sole shareholder
of these entities, employee of these
entities, and who, as a person, has had
contact and done all of these transactions
the questions regarding these transactions.
You show me case law that supports your
position, and I'll change my position.

MR. WAITE:    It's not privileged, Jason, so there's no
reason why he can't and shouldn't answer.  If
you want to take it up with the court, we'll
do that.

MR. MASSARO:  That's fine.  We can do that, but we're
maintaining this separate based upon your
allegations.  You want to withdraw your
piercing Count, then we can, you know, loosen
up the restrictions on the differences.  But
you're assuming they're all one in the same.
You said it before, that there's not three
people sitting in front of you.  There are.
There are three separate entities.  You've
got a piercing Count.  That's it.  Ask your
questions and we'll move on, take it up with
the court, file your motion.

MR. SCHREIBER: That's exactly what we're going to do, but
I'm going to continue to ask the questions,
and you just make your objections, and you
keep instructing him not to answer.  Okay.

MR. MASSARO:  Just ask your questions.  Quit preaching.

MR. SCHREIBER: Fine.


Filing 82, ex. A (Walthall deposition), at pp. 31-33.

Following the lunch break, defendants' counsel offered to permit Walthall to answer those questions he had previously been instructed not to answer.  The following discussion occurred.

> MR. MASSARO:      Dave, before you begin, you had some questions before that were certified.  I instructed him not to answer.  We've gone through several of what was along that course that I probably would have instructed him of the same nature and type.  And I'm offering now if you want to revisit those questions with him, if your notes reflect that, you know, he can answer just to avoid any issue.
>
> MR. WAITE:        It's really going to be difficult if we go back and --
>
> MR. MASSARO:      I understand.  The offer's there.
>
> MR. WAITE:        Okay, thank you.
>
> MR. SCHREIBER:    At this point, I'm just inclined to go ahead and take care of those during the 30(b)(6)'s when we get those to happen.

Filing 101, ex. 5f (Walthall deposition), at pp. 111-112.

In support of its motion to compel and for sanctions, the plaintiff argues there was no justifiable reason for instructing Walthall not to answer deposition questions and for insisting that Walthall, in his individual capacity, could not provide testimony concerning his knowledge of the ALMCO and Intergrain businesses.  The plaintiff argues that as a result of the erroneous and obstreperous positions taken by defendant's counsel, Walthall refused to respond, or provided incomplete and evasive responses to deposition questioning.  Defendants respond that plaintiff's motion to compel should be denied because the plaintiff's questions were oppressive in nature; the plaintiff

24

failed to properly certify the questions Walthall refused to
answer; any delay or disruption caused by the eight unanswered
questions was minimal; and Walthall withdrew his objections and
was willing to answer the questions but the plaintiff chose not
to revisit those questions until the 30(b)(6) depositions were
taken.  Filing 101.

    Defense counsel instructed Walthall not to answer eight
deposition questions, and Walthall followed these instructions.
Rule 30(c)(2) of the Federal Rules of Civil Procedure states:

    A person may instruct a deponent not to answer only
    when necessary to preserve a privilege, to enforce a
    limitation ordered by the court, or to present a motion
    under Rule 30(d)(3).

Fed..R. Civ. P. 30(c)(2).  Defense counsel did not instruct
Walthall to refuse to answer a deposition question based on a
claim of privilege, that the deposition was being "conducted in
bad faith or in a manner that unreasonably annoy[ed],
embarrass[ed], or oppress[ed] the deponent," (Fed. R. Civ. P.
30(d)(3)(A)), or that the ability to respond was limited by court
order.  Accordingly, Walthalls's refusal to answer the eight
questions identified in the deposition was "highly improper."
Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb.
1995).  See also, Redwood v. Dobson, 476 F.3d 462, 467-468 (7th
Cir. 2007).

    Defense counsel argues that deposing Walthall in his
individual capacity regarding his knowledge of AMLCO and
Intergrain was oppressive.  Despite defendants' claim that the
piercing count creates a "fundamental difference" in how
depositions are conducted, the defendants have not cited, and the
court has not found, any case law supporting the defendants'

25

argument that the plaintiff's piercing count excused Walthall, deposed in his individual capacity, from providing answers based on his personal knowledge of ALMCO's and Intergrain's business history and practices.  The defendants have also cited no case law stating three separate depositions were necessary.

Defendants' argument is contrary to the purpose of the federal discovery rules.  "The federal discovery rules were designed to provide each party with the fullest pre-trial knowledge of the facts and to clarify and narrow the issues to be tried." Nutt v. Black Hills Stage Lines, Inc., 452 F.2d 480, 483 (8th Cir. 1971).

> Modern instruments of discovery serve a useful purpose.
> . . . They together with pretrial procedures make a
> trial less a game of blind man's buff and more a fair
> contest with the basic issues and facts disclosed to
> the fullest practicable extent. . . .  Only strong
> public policies weigh against disclosure.

U. S. v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). Although Walthall was being deposed in his individual capacity, he had personal knowledge of the operations and transactions of ALMCO and Intergrain.  This information was not privileged. Asking deposition questions aimed at discovering that information was not improper, or designed to annoy, oppress, or embarrass Walthall.

Even if, as defendants claim, the deposition questioning was conducted in bad faith, instructing a witness not to answer is not the appropriate response.  Defense counsel "should have made an explicit 30(c) objection or presented the matter to the court through a proper motion under Rule 30(d)(3)." Dravo Corp., 164 F.R.D. at 75.  "Counsel for the witness may halt the deposition

and apply for a protective order, . . . but must not instruct the witness to remain silent." Redwood, 476 F.3d at 467-468.

The defendants argue that Walthall's refusal to answer the eight questions was harmless; that the deposition was not disrupted and, in any event, it is not finished so the questions can be raised again. They further claim the plaintiff waived its right to file this motion to compel by failing to ask the eight questions at the time of the deposition when Walthall stated he was willing to withdraw his objections.

Technically speaking, one could argue that the plaintiff could have required the court reporter to find the unanswered questions within the transcript at the time of the deposition, and then could have asked those questions again. Practically speaking, that was neither a realistic remedy nor a fair option for the plaintiff.

Considered as a whole, Walthall's deposition contains some straightforward responses and kernels of information interspersed with obstreperous comments and corrections by defense counsel, and unnecessary requests by Walthall to clarify who is being asked the question. Defense counsel made it clear that the depositions would be conducted his way or not at all. He would not agree to a standing objection to alleviate the disruption of persistent and unwarranted objections, and despite the plaintiff's request at the time of the deposition and its filing of this motion to compel, defense counsel has not cited the legal basis for insisting that three depositions were needed and that Walthall, in his individual capacity, could not testify about his work experience with ALMCO and Intergrain.

Without question, the cadence and fact-finding purpose of the deposition was disrupted.  Plaintiff's plan to re-group, obtain a deposition transcript, and re-ask the questions during the anticipated 30(b)(6) depositions was reasonable.  Under the circumstances presented, I do not consider plaintiff's statement that it would wait for the 30(b)(6) depositions, rather than attempt to cover the topics without the benefit of a transcript, as a waiver of plaintiff's right to file this motion to compel.

The fact that the deposition is not complete at this time does not erase the past harms and problems experienced during the first installment of Walthall's deposition.  Contrary to defense counsel's assertion, the problems and inefficiencies encountered at Walthall's deposition should "be laid at [defense counsel's] doorstep."  Filing 82, ex. A (Walthall deposition), at pp. 31-33. Gamesmanship is not allowed in the arena of federal discovery. Defense counsel is reminded that "frequent interruptions, unjustified instructions to witnesses not to answer questions, and argumentative and suggestive objections" are not permitted, and "merely because depositions do not take place in the presence of judges does not mean lawyers can forget their responsibilities as officers of the court."  Ewald v. Wal-Mart Stores, Inc., 139 F.3d 619, 622 n. 4 (8th Cir. 1998).

I find that defense counsel's instructions to Walthall to not answer questions, his unilateral declaration on how the depositions would be conducted and the scope of knowledge Walthall would be allowed to disclose, and his deposition interruptions to enforce these parameters, were not substantially justified.  I further find Walthall wrongfully, and without substantial justification, refused to respond to the questions asked and unduly limited his disclosure of knowledge he

possessed.  The plaintiff secured answers to the majority of its
questions, but the deposition was unduly delayed and interrupted
addressing legal positions, objections, and interjected comments
that should not have been raised.  The court notes that Walthall
was questioned for a total of approximately five and one-half
hours.  While it is impossible to precisely determine the amount
of additional deposition time consumed due to the improper
conduct of Walthall and his counsel, a fair reading of the
deposition indicates one-third of the time was attributable to
discussing or arguing the merits of the defendants' position, and
to phrasing, re-phrasing, clarifying, and qualifying questions
and answers in order to obtain responses consistent with the
limited scope imposed by defendants' counsel on this deposition.

    "A district court has wide latitude in imposing sanctions
for failure to comply with discovery." Aziz v. Wright, 34 F.3d
587, 589 (8th Cir. 1994).  The court finds that, under the
circumstances, the appropriate sanction is to impose a monetary
sanction against defendant Walthall for one-third of the
deposition costs associated with taking Walthall's deposition on
December 12, 2007.  Specifically, defendant Walthall and/or his
counsel shall pay for one-third of plaintiff's attorney fees for
the time spent by Mr. Schreiber at the deposition that day, and
one-third of the court reporter's attendance/transcription fee
and transcript charge.  In lieu of requiring defendant Walthall
to also pay all or a portion of the travel expenses incurred by
plaintiff's counsel to attend this deposition, and to facilitate
access to the presiding judge and trial forum should further
deposition problems arise, the court will further order that
Walthall's deposition, in his individual capacity and as a
30(b)(6) deponent for ALMCO and Intergrain, shall be re-convened
and taken in Lincoln, Nebraska at a time and place to be

29

determined by the parties, each party to pay its own costs, expenses, and attorney fees for attending this deposition. Walthall shall also pay the plaintiff's fees and expenses incurred in filing this motion to compel.

IT THEREFORE HEREBY IS ORDERED:

1.  Defendants' motion to strike plaintiff's supplemental Rule 26 disclosure and expert witness designation, filing 66, is denied.

2.  Plaintiff's motion to amend its complaint, filing 68, is granted, and

    a.  The plaintiff shall file and serve its amended complaint, a copy of which is attached to its motion to amend, on or before May 30, 2008.

    b.  The defendants shall file their answer or response to the plaintiff's complaint no later than eleven days after the amended complaint is filed.

    c.  To facilitate further progression of this case, within twenty days following the filing of defendants' answer or response to plaintiff's amended complaint, the parties shall advise the undersigned of their positions regarding when the case can be ready for trial.

3.  The motion to strike defendants' expert witness filed by the plaintiff and Third Party Defendant Rainbow Grain Co., Inc, filing 72, is denied.

4.  The motion to compel and for sanctions filed by the plaintiff and Third Party Defendant Rainbow Grain Co., Inc, (("RP and RG"), filing 80, is granted, and

    a.  RP and RG are awarded one-third of the attorney fees for David Schreiber's attendance at Walthall's deposition, and one-third of the court reporter's charge for attending and transcribing that deposition, and for the cost of the transcript.  On or before June 13, 2008, RP and RG shall file an application for recovery of these fees and expenses, along with their position as to who should bear these expenses as between

30

defendant Walthall and his counsel, with appropriate supporting documentation and affidavits. Defendants shall file their response to this request within seven days after RP and RG's filing, in the absence of which the court will deem RP and RG's request conceded by the defendants and an award will be entered accordingly.

b.   RP and RG are granted their expenses, including reasonable attorney's fees in bringing their motion to compel to the court. The parties shall attempt in good faith to reach an agreement regarding the amount to be awarded by the court under Rule 37(a). If an agreement is reached, a joint stipulation shall be filed with the court setting forth the terms of that agreement. In the event counsel are unable to agree on the amount to be awarded or upon who should bear that expense as between defendant Walthall and his counsel, RP and RG's application for fees and expenses shall be filed, supported by appropriate affidavits on those questions, and further supported by brief submitted to the undersigned, on or before June 13, 2008. Defendant Walthall shall have seven days thereafter to submit his response and file appropriate affidavits in opposition. In the event either side desires a hearing on this question, request therefor shall be made in the application or response, as applicable. In the absence of any response to this order by either RP and RG or defendant Walthall regarding the matter of fees and expenses, the sum of $700.00 will be awarded.

c.   The clerk shall make any award of attorneys fees and expenses herein a part of any judgment eventually entered in this case unless the parties file a statement with the clerk advising that the award of fees and expenses was paid prior to judgment, together with documentation of such payment.

d.   The deposition of John Walthall, in his individual capacity and as the Rule 30(b)(6) designee for defendants ALMCO and Intergrain, shall be re-convened and taken in Lincoln, Nebraska at a date and time to be scheduled by the parties, with all

31

parties, including John Walthall, to pay their own costs, fees, and expenses (including travel expenses) related to this deposition.

DATED this 23rd day of May, 2008.

BY THE COURT:

s/ David L. Piester

David L. Piester
United States Magistrate Judge

32